*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0280a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EMILIO VASQUEZ,

  *Petitioner-Appellant,*

  *v.*

KURT JONES, Warden,

  *Respondent-Appellee.*

No. 04-2274

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 02-73310—Charles R. Simpson III, District Judge.

Argued: April 18, 2007

Decided and Filed: July 24, 2007

Before: ROGERS and COOK, Circuit Judges; and GWIN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Bridget M. McCormack, MICHIGAN CLINICAL LAW PROGRAM, Ann Arbor, Michigan, for Appellant. Janet A. VanCleve, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Bridget M. McCormack, MICHIGAN CLINICAL LAW PROGRAM, Ann Arbor, Michigan, for Appellant. Janet A. VanCleve, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

---

## AMENDED OPINION

---

COOK, Circuit Judge. Emilio Salomon Vasquez appeals the district court's denial of his habeas corpus petition. We reverse and remand with instructions to grant the petition.

### I. Facts and Procedural History

In 1995, a dispute at a block party between Deondre Byrd and William Taylor escalated into a shootout in which an innocent bystander, Tamara Stewart, was killed. Vasquez told police investigating the crime that when the melee erupted, he grabbed a .22 caliber rifle from William Taylor and fired it in self-defense. No weapons were recovered from the scene, but forensics

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

investigators determined that at least three weapons had been fired in the shootout: a 9-millimeter handgun, a .38 caliber rifle, and a .22 caliber rifle. They determined that the 9-millimeter fired the fatal shot. Michigan charged petitioner Emilio Solomon Vasquez and a co-defendant, Joe Olive, in connection with the shooting. At a preliminary examination hearing, Demond Brown testified that he saw Vasquez firing a handgun during the shootout; based on this testimony, the state court bound Vasquez over for trial.

At trial, Vasquez repeated the self-defense story he had told investigators. Demond Brown did not appear at trial, so the prosecution sought to introduce the transcript of his preliminary examination testimony under the hearsay exception for the former testimony of an "unavailable" declarant. *See* Mich. R. Evid. 804(b)(1). The trial court satisfied itself that the state had used due diligence to procure Brown for trial and therefore deemed Brown "unavailable" under Mich. R. Evid. 804(a)(5). Vasquez's trial counsel (1) objected that no one—that is, Vasquez's former lawyer—had cross-examined Brown about his prior criminal convictions, which bear on his character for truthfulness; and (2) proffered that in a post-preliminary-examination interview with defense counsel, Brown recanted his preliminary examination testimony and disclosed that the prosecution had promised him leniency on an embezzlement charge in exchange for his testimony against Vasquez. The prosecution responded that the defense had the motive and opportunity to conduct this cross-examination at the preliminary examination hearing, so the testimony should be admitted under Rule 804(b)(1).

The trial court admitted Brown's hearsay testimony and ruled that defense counsel could not impeach Brown with his prior convictions, invoking Mich. R. Evid. 609(a), which reads: "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination . . . ." The trial court reasoned that the prior-crimes impeachment would not be presented "during cross-examination"—that is, because Brown failed to appear, there *would be no* "cross-examination" within the meaning of Rule 609.

Defense counsel insisted that the court's reading of "during cross-examination" was "hyper literal" and that foreclosing this impeachment would violate Vasquez's Confrontation Clause rights. The prosecution continued to argue that the opportunity to question Brown at the preliminary examination hearing was all that the Confrontation Clause required, and that it would not be fair to let the defense refer to Brown's past convictions because Brown would not have the chance to explain the circumstances and rehabilitate his own credibility. Even though the court acknowledged that the voluminous discovery made it unrealistic to expect defense counsel to confront a witness with his criminal record at the preliminary examination stage, and even though the court questioned whether defense counsel's motive to question witnesses at that early stage might be different than at trial, it concluded that defense counsel's motive was "close enough" and barred the prior-crimes impeachment. Vasquez was convicted, unsuccessfully sought relief in state court on several claims, unsuccessfully petitioned the district court for habeas relief, and then brought this appeal.

## II. Analysis

This court "review[s] the legal conclusions of the district court sitting in habeas *de novo* and the factual findings of both the state trial and appellate courts for clear error." *Hamilton v. Morgan*, 474 F.3d 854, 857–58 (6th Cir. 2007) (citing *Brumley v. Wingard*, 269 F.3d 629, 637–38 (6th Cir. 2001)).

A.       Admissibility of the Demond Brown Transcript Under *Ohio v. Roberts*

Vasquez asserts that the Confrontation Clause, as interpreted by the Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), *abrogated by Crawford v. Washington*, 541 U.S. 36 (2004),

required the state court to exclude Brown's hearsay transcript testimony because it neither fell within a firmly-rooted hearsay exception nor contained particularized guarantees of trustworthiness. But Vasquez waived his *Roberts* claim regarding the admission of Brown's testimony by not presenting it to the district court in his habeas petition. *See, e.g.*, *Hormel v. Helvering*, 312 U.S. 552, 556 (1941); *Brown v. Marshall*, 704 F.2d 333, 334 (6th Cir. 1983) (per curiam). Moreover, Vasquez procedurally defaulted the *Roberts* claim by failing to exhaust it in the state courts, and he has never attempted to show cause and prejudice sufficient to excuse the default. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Vasquez's citation to *Roberts* in a footnote in the ineffective-assistance section of his direct-appeal brief did not "fairly present[]" this claim to the state courts. *See, e.g.*, *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003). Although Vasquez need not "cite book and verse on the federal constitution" to satisfy the exhaustion requirement, *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (internal quotations omitted), his sporadic and undeveloped allusions to *Roberts* do not suffice. Therefore, we decline to entertain Vasquez's *Roberts* claim.[1]

B.       Frustration of Vasquez's Attempts To Impeach Demond Brown's Hearsay Testimony

Vasquez also argues that the state trial court violated his Confrontation Clause rights by frustrating his attempts to impeach Demond Brown's hearsay testimony.

1.       Procedural Default

Over the course of this litigation, Vasquez has complained of his inability to impeach Demond Brown's hearsay testimony with (1) Brown's prior criminal record, which bears on his character for truthfulness; and (2) statements from a post-preliminary-examination interview between Brown and defense counsel in which Brown recanted his preliminary examination testimony and disclosed that the prosecution promised him leniency on an embezzlement charge in exchange for his testimony against Vasquez. Vasquez has consistently raised the issue of Brown's criminal record, but as explained below, he did not properly raise the recantation and *quid pro quo* issues in state court. The only impeachment claim properly before the court concerns Brown's prior criminal history.

Vasquez's direct appeal omitted the recantation and *quid pro quo* issues. In his motion for a new trial, he argued that he could not have discovered the basis for these claims in time for trial because Brown absconded. But according to the Michigan trial court's order denying his new-trial motion, this evidence was not "newly discovered." The Michigan Court of Appeals and Supreme Court both denied an application for leave to appeal without explanation, so this court "looks through" these decisions to the last reasoned state-court decision, *see Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991), and it is clear that Vasquez's failure to bring the claims in compliance with Michigan procedural rules "was at least a 'substantial basis'" for that court's decision denying relief. *See McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985) (citing *Hockenbury v. Sowders*, 620 F.2d 111, 115 (6th Cir. 1980)). We thus decline to address these procedurally defaulted claims.[2]

2.       Standard of Review

When a prisoner who filed his habeas petition after AEDPA's effective date properly raised a claim in state court, yet that court did not review the claim's merits, AEDPA deference does not apply, and the federal habeas court reviews legal issues de novo. *See, e.g.*, *Williams v. Coyle*, 260

---

[1]Vasquez also argues that *Crawford* should be applied retroactively to his case, but the Supreme Court's recent decision in *Whorton v. Bockting*, 127 S. Ct. 1173, 1177 (2007), forecloses this argument.

[2]Vasquez has never attempted to show cause for his failure to timely raise these claims or prejudice arising from the default. *See McBee*, 763 F.2d at 813; *Sykes*, 433 U.S. at 87.

F.3d 684, 706 (6th Cir. 2001).   But complexity arises here because although the state court adjudicated Vasquez's Confrontation Clause *claim*, it never addressed the constitutional *issue*—instead, it simply held that any alleged error was harmless.  *See People v. Vasquez*, No. 195915, 1998 WL 1991270, at \*1 (Mich. Ct. App. June 26, 1998) (per curiam).  Although *Wiggins v. Smith* could be read to suggest that AEDPA deference applies only to *issues* that the state court actually considers on the merits,**3** this circuit applies "modified AEDPA deference" in circumstances like this where the state court adjudicated the claim but with little analysis on the substantive constitutional issue.  *See, e.g.*, *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005).  Under this standard, the court conducts a "careful" and "independent" review of the record and applicable law, but cannot reverse "unless the state court's decision is contrary to or an unreasonable application of federal law." *Maldonado*, 416 F.3d at 476; *see also Howard*, 405 F.3d at 467.  We conclude that the state court's rejection of Vasquez's impeachment claim was an unreasonable application of Supreme Court Confrontation Clause jurisprudence, most notably *Davis v. Alaska*, 415 U.S. 308 (1974).

3.      *Davis v. Alaska* and Progeny

In *Davis v. Alaska*, 415 U.S. 308 (1974), the Supreme Court held that the state trial court violated the defendant's Confrontation Clause rights by barring him from impeaching a prosecution witness with the witness's prior criminal record.  In Vasquez's case, the state courts found no constitutional infirmity in barring Vasquez from impeaching Brown's hearsay testimony with evidence of Brown's prior criminal record.  That determination represented an unreasonable application of *Davis*.

In *Davis*, the state charged the defendant with stealing a safe.  To insulate the credibility of its star witness, the prosecution sought a protective order barring the defense from referring to the witness's juvenile record.  *See id.* at 310–11.  The defense protested that because the witness feared his probation would be revoked, he was subject to undue police pressure and therefore possibly biased against the defendant.  *Id.* at 311.  The trial court granted the protective order, relying in part on an Alaska law giving it discretion to admit a juvenile record in these circumstances, *id.* at 311 & n.1, and the defendant was convicted.  In the passage relevant to Vasquez's case, the Supreme Court explained:

> Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.

---

**3**In *Wiggins v. Smith*, 539 U.S. 510, 534 (2003), the Supreme Court considered a habeas petitioner's ineffective-assistance claim; the state courts had rejected the claim but without discussing the "prejudice" prong of *Strickland*.  The Court concluded that its review was "not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis."  It then reviewed the claim de novo.  *See also Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (explaining *Wiggins*).

*Id.* at 316. The Court reversed the defendant's conviction because the state courts had prohibited him from probing the witness's possible bias. *Id.* at 317–18.

In *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), the Supreme Court refined the meaning of *Davis*. Although *Davis* had recognized the importance of cross-examining a witness regarding bias, *id.* at 678–79, *Van Arsdall* stressed that "[i]t does not follow . . . that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Id.* at 679. For example, the judge may impose "reasonable limits" to avoid "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* The Confrontation Clause "'guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). Applying these principles, *Van Arsdall* acknowledged a Confrontation Clause violation because the trial court had "prohibited *all* inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge." *Id.* The Court then restated its rationale: "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias . . . ." *Id.* at 680 (citing *Davis*, 415 U.S. at 318).

These cases demonstrate that the Confrontation Clause affords the right to impeach a witness with his criminal record, subject to the trial court's discretion to impose reasonable limitations to prevent harassment and annoyance of the witness. *Van Arsdall*, 475 U.S. at 679. Impeachment with prior crimes is precisely the "otherwise appropriate" cross-examination permitted under *Van Arsdall*. 475 U.S. at 680. It is a prototypical form of cross-examination, even if it goes only to the witness's credibility. *See Davis*, 415 U.S. at 316; *see also, e.g.*, *Ohler v. United States*, 529 U.S. 753, 757 (2000) ("[O]nce the defendant testifies, she is subject to cross-examination, including impeachment by prior convictions . . . ."); *Grunewald v. United States*, 353 U.S. 391, 420 (1957) ("[W]hen a criminal defendant takes the stand, he . . . becomes subject to cross-examination impeaching his credibility just like any other witness . . . ."). Therefore, the state courts' failure to recognize that the trial court's exclusion of Vasquez's impeachment evidence amounted to a Confrontation Clause violation represents an unreasonable application of Supreme Court precedent, most notably *Davis*.

4.     The State's Response

The state attempts to debunk Vasquez's impeachment claim by arguing that "[t]he Supreme Court has never held that cross-examination with regard to credibility, as opposed to bias, is constitutionally protected." The state points to *Davis* and *Van Arsdall*, but the passage from *Davis* we block-quote above draws no meaningful distinction between the constitutional status of cross-examination as to bias and that of cross-examination as to credibility or character for truthfulness. It simply says that impeachment based on past crimes is "[o]ne way of discrediting the witness"—and a "traditional" one at that—while probing bias is "[a] more particular attack on the witness' credibility." *Davis*, 415 U.S. at 316. That these concepts are separately identifiable says nothing about their relative importance in our constitutional system. And we give little weight to Justice Stewart's caution in concurrence that the *Davis* majority "neither h[eld] nor suggest[ed] that the Constitution confers a right in every case to impeach the general credibility of a witness through cross examination about his past delinquency adjudications or criminal convictions." 415 U.S. at 321 (Stewart, J., concurring). No other Justice joined this concurrence, and as stated above, the six in the majority drew no meaningful distinction between bias and credibility. Though the particular

facts of *Davis* and *Van Arsdall* implicated only bias,[4] the holdings of those cases clearly apply to both bias and credibility.[5]

The state also points to this circuit's decision in *Boggs v. Collins*, 226 F.3d 728 (6th Cir. 2000). In that rape prosecution, the state trial court limited the scope of defense counsel's cross-examination to the victim's past drug use, history of mental illness, and recollection of the attack, *id.* at 732, while barring inquiry into her previous false accusations of rape (questioning designed to impugn her character for truthfulness). *Id.* at 733. Following his conviction, the defendant brought a habeas corpus action, arguing the exclusion of evidence of past false rape accusations violated the Confrontation Clause. *Id.* at 735. The *Boggs* panel found that *Davis* compelled the conclusion that the defendant suffered no Confrontation Clause violation, reasoning that *Davis* had "distinguished between a 'general attack' on the credibility of a witness . . . and a more particular attack on credibility 'directed toward revealing possible biases . . . .'" *See id.* at 736 (quoting *Davis*, 415 U.S. at 316). It opined that Justice Stewart's concurrence "underscored that the Confrontation Clause was implicated *only* because Davis was seeking to show bias or prejudice." *Id.* at 737 (emphasis added). The panel then opined that *Van Arsdall* and subsequent Supreme Court and Sixth Circuit cases "have adhered to the distinction . . . drawn by Justice Stewart . . . ." *Id.* Finally, the panel discussed cases from other circuits that supposedly take the same position. *Id.* at 738 (collecting cases).

*Boggs* is not dispositive for several reasons. First, and most obviously, it unquestioningly accepts Justice Stewart's attempt to commandeer the majority opinion in *Davis*. Second, *Boggs*, like most of the cases it marshals, was a rape-shield case where the Confrontation Clause arguably provides defendants less protection than in other cases. That is, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). Rape-shield laws vindicate a legitimate state interest in "encourag[ing] victims of sexual misconduct to

---

[4]In *Davis*, 415 U.S. at 311, defense counsel never attempted to justify the past-crimes impeachment as probative of character for truthfulness. In *Van Arsdall*, 475 U.S. at 676, defense counsel had only "sought to impeach [the prosecution's eyewitness] by questioning him about the dismissal of a criminal charge against him . . . after [the witness] had agreed to speak with the prosecutor about [the victim's] murder."

[5]*Smith v. Illinois*, 390 U.S. 129 (1968), also confirms that the Confrontation Clause affords a defendant the right to impeach a witness's credibility by traditional means. Though *Smith* preceded *Davis*, the *Davis* majority cited *Smith* with approval, or at least acknowledged its continuing vitality. *Davis*, 415 U.S. at 318 n.6. In *Smith*, the state tried the defendant after an informant allegedly entered a restaurant and purchased heroin from the defendant with police-provided marked currency. 390 U.S. at 129–30. Only the informant and the defendant testified at trial, with the defendant testifying that the informant bought the heroin from another restaurant patron, so "[t]he only real question at the trial . . . was the relative credibility of the petitioner and this prosecution witness." *Id.* at 130 & nn.3–4. On direct examination, the witness identified himself as "James Jordan." *Id.* at 130. Defense counsel knew the witness personally—and thus knew he was not "James Jordan"—so he tried to expose this on cross-examination. The trial court permitted defense counsel to ask the witness whether his name really was "James Jordan" (and the witness admitted it was not), but the court prevented defense counsel from asking what the informant's name actually was. *Id.* at 130–31. The Supreme Court found this limitation on cross-examination flatly inconsistent with the Confrontation Clause, *see id.* at 131, and the only possible purpose of this cross-examination was to expose the witness's lack of credibility: the witness's actual name obviously had no bearing on any element of the crime. In other words, defense counsel's line of questioning was an otherwise-proper "general attack on the credibility of a witness," *cf. Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), and the trial court's failure to allow it violated the defendant's Confrontation Clause rights.

Our conclusion accords with *Wade v. O'Sullivan*, where the Seventh Circuit noted that it "ha[s] held that when a dead or otherwise unavailable hearsay declarant's testimony is admitted against the defendant, the defendant's confrontation clause rights are violated when the trial court fails to allow him to impeach the unavailable declarant with the declarant's own inconsistent statements." No. 97-2670, 1999 WL 1216677, at *3 (7th Cir. Dec. 17, 1999) (unpublished) (citing *United States v. Burton*, 937 F.2d 324, 328 (7th Cir. 1991), and *Smith v. Fairman*, 862 F.2d 630, 637–38 (7th Cir. 1988)). Prior inconsistent statements do not necessarily indicate the witness's bias—rather, they are generally used to impugn the witness's credibility.

institute and to participate in legal proceedings against alleged offenders." *Cf., e.g.*, Fed. R. Evid. 412 advisory committee's note. But such a legitimate interest must be very substantial to trump the defendant's right to confront witnesses by traditional means: in *Davis*, the Court rejected as insufficient the state's asserted interest in the "rehabilitative goals of juvenile correctional procedures." 415 U.S. at 319–20. In Vasquez's case, there is no state interest asserted in preventing impeachment of hearsay testimony by means that would have been permitted had the declarant testified at trial. On the contrary, the rules of evidence generally *allow* this practice.[6] Third, *Boggs* is materially distinguishable on its facts. The *Boggs* state trial court actually permitted the defense to cross-examine the witness on numerous subjects *at trial*—just not past false rape allegations. 226 F.3d at 732–33. Therefore, *Boggs* is better seen as a case about the court's broad discretion to limit the scope of cross-examination to prevent undue harassment and the like. *See, e.g.*, *Davis*, 415 U.S. at 316; *Van Arsdall*, 475 U.S. at 679. The trial ruling here, however, prevented Vasquez's counsel from doing *anything* to challenge Demond Brown's hearsay testimony at trial.

For these reasons, we reject the state's argument and conclude that the state courts' failure to recognize that the exclusion of Vasquez's past-crimes impeachment evidence violated his Confrontation Clause rights represents an unreasonable application of Supreme Court jurisprudence, most notably *Davis v. Alaska*.

5.     Harmless Error

Confrontation Clause errors are subject to harmless-error analysis. *See, e.g.*, *Van Arsdall*, 475 U.S. at 684; *Chapman v. California*, 386 U.S. 18, 21–22 (1967). We filed the opinion in this case before the Supreme Court decided *Fry v. Pliler*, 127 S. Ct. 2321 (2007). Following the standard then prevailing in this circuit, we held that because the state court actually had applied harmless-error review,[7] we, as a federal habeas court reviewing a petition subject to AEDPA, would

---

[6]In fact, this entire controversy likely owes to the inclusion in Michigan Rule of Evidence 609 of the phrase "during cross-examination," which is not found in the analogous Federal Rule. The state trial court here interpreted this language to mean "during *live* cross-examination," but we doubt this language does, or could, represent such a limitation.

First, the comments accompanying Michigan Rule 609(a) suggest that the "during cross-examination" language is likely unintentional surplusage. The 1978 Note acknowledges that Michigan Rule 609(a) is a "modified version" of Federal Rule 609(a), but mentions only other, insubstantial modifications and ignores the "during cross-examination" language that caused the confusion in this case.

Second, such a limitation would be inconsistent with traditional evidence law. The rules of evidence generally require that if past crimes are used to impeach a witness's credibility, the witness must be given an opportunity to explain his past crimes, show he has been rehabilitated, and convince the jury he should be believed. Thus, for example, counsel cannot simply forgo the subject on cross-examination and then call the Clerk of Courts to testify about the witness's prior criminal record. For this reason, impeachment with past crimes *usually does* happen on cross-examination. But it need not. When the witness is "unavailable" and his testimony is introduced as hearsay, the general rule is that the defendant's right to impeach trumps the courtesy the law extends in letting the witness explain his past crimes. As the Advisory Committee wrote in its 1972 Note accompanying the proposed Federal Rule of Evidence 806, "The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified." Michigan Rule 806 exactly parallels Federal Rule 806 and states: "When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." This similarity suggests that Michigan evidence law is intended to follow tradition and allow impeachment of a hearsay declarant, whether or not the declarant testifies in person.

[7]This is not to say that the state court's consideration was exemplary. The Michigan Court of Appeals's harmless-error analysis, in its entirety, reads:

We find it unnecessary to address the constitutional issue propounded by defendant. Even assuming arguendo the validity of his constitutional argument, violations of the right to cross-examination are subject to a two-step harmless-error analysis. *People v. Cunningham*, 215 Mich.App 652, 657; 546 NW2d 715 (1996). First, in view of the substantial evidence implicating defendant in the crimes, any

inquire whether the state court's conclusion as to harmless error was itself unreasonable. *Eddleman v. McKee*, 471 F.3d 576, 583 (6th Cir. 2006) (citing *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam)). In other words, we applied the standard of "*Chapman* plus AEDPA deference." *Id.* To determine whether the Confrontation Clause error in this case was harmless under *Chapman*, we looked to *Van Arsdall* and its five-factor test,[8] concluded that none of the *Van Arsdall* factors supported a finding of harmlessness, and thus followed those courts that have rejected a state court's harmless-error determination despite AEDPA deference when few or none of the *Van Arsdall* factors pointed to harmlessness. *See, e.g.*, *Eddleman*, 471 F.3d at 587–88 (none); *Stapleton*, 288 F.3d at 867–68 (one); *Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1042–43 (9th Cir. 2005) (one); *cf. Benn v. Greiner*, 402 F.3d 100, 106–07 (2d Cir. 2005) (accepting the state court's harmless-error determination where three factors pointed to harmlessness).

While a petition for panel rehearing pended, the Supreme Court issued *Fry*. We granted panel rehearing to consider its effect, if any, on this case. We conclude that while *Fry* changes the standard we must apply, it does not change the result here.

In *Fry*, the Supreme Court held that a federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*], 507 U.S. 619 . . . [(1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* . . . ." 127 S. Ct. at 2328. *Fry*, 127 S. Ct. at 2326–27, therefore overruled *Eddleman*, 471 F.3d at 583, where we concluded that "AEDPA replaced the *Brecht* standard with the standard of *Chapman* plus AEDPA deference when, as here, a state court made a harmless-error determination." To resolve the harmless error issue, we now must ask whether the constitutional violation "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). If "'the matter is so evenly balanced' that this Court has 'grave doubt' as to the harmlessness of the error, it 'should treat the error, not as if it were harmless, but as if it affected the verdict (*i.e.*, as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')." *Stapleton v. Wolfe*, 288 F.3d 863, 867 (6th Cir. 2002) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1994)).

This court has repeatedly referred to the *Van Arsdall* factors in determining whether a Confrontation Clause error was harmless under *Brecht*.[9] *See, e.g.*, *Stallings v. Bobby*, 464 F.3d 576, 582 (6th Cir. 2006); *Fulcher v. Motley*, 444 F.3d 791, 809–10 (6th Cir. 2006); *Madrigal v. Bagley*,

---

error in failing to admit the impeachment evidence is harmless beyond a reasonable doubt because it had no effect on the verdict. *People v. Robinson*, 386 Mich. 551, 563; 194 NW2d 709 (1972); *People v. Minor*, 213 Mich.App 682, 685; 541 NW2d 576 (1995). Second, the error, if any, is not so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless. *Robinson*, *supra* at 563; *Minor*, *supra* at 685-686.

*Vasquez*, 1998 WL 1991270, at *1. The opinion contains no discussion of the "evidence implicating [Vasquez] in the crimes." *Id.*

[8] Under *Van Arsdall*, courts are to consider "a host of factors," including (1) "the importance of the witness' testimony in the prosecution's case," (2) "whether the testimony was cumulative," (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points," (4) "the extent of cross-examination otherwise permitted," and (5) "the overall strength of the prosecution's case." 475 U.S. at 684 (citing *Harrington v. California*, 395 U.S. 250, 254 (1969)).

[9] This approach is sensible: *Brecht* relied on several factors also found in *Van Arsdall*. That is, *Brecht* considered the prominence of the constitutional error (the prosecution's reference to the defendant's post-*Miranda* silence), whether the improperly admitted testimony was "cumulative," and the strength of the prosecution's other evidence. 507 U.S. at 639.

413 F.3d 548, 551–52 (6th Cir. 2005); *Stapleton*, 288 F.3d at 867–68; *Tucker v. Warden, Ohio State Penitentiary*, 64 F. App'x 467, 472 (6th Cir. 2003) (unpublished); *Crane v. Sparkman*, No. 97-5321, 1998 WL 598725, at *5 (6th Cir. Aug. 27, 1998) (unpublished) (per curiam). We therefore have taken a fresh look at our prior analysis of the *Van Arsdall* factors, and we conclude that the Confrontation Clause error in this case "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.

First, Demond Brown's testimony was important to the prosecution's case. As the prosecutor said at trial, Brown's testimony "[was] of some importance as he [did] put a gun in both both [sic], in each Defendant's hands at the time of the shooting." And as the trial court recognized, "it was Mr. Brown's testimony that was the basis for bind over." Detective Richard Stern testified that Demond Brown was an "[e]xtremely important" witness in the case. The jurors too seemingly thought Brown's testimony significant because they asked to review the transcript during deliberations. *Cf. United States v. Tarricone*, 996 F.2d 1414, 1420 (2d Cir. 1993) ("[T]he jury's requests for a read-back of [argument and testimony on a certain subject] suggest that the subject was important to their considerations." (internal quotations omitted)). Moreover, no physical evidence linked Vasquez to the murder weapon,[10] so witness testimony was crucial. Witness Brandi Gibbs testified that she did not see Vasquez at the party, that she had never seen him before the preliminary examination, and that she only had *heard* Vasquez was involved. The prosecution impeached her credibility on this point with her prior inconsistent statements (earlier statements to investigators implicating Vasquez that she testified at trial were only rumors she had repeated). The other witness, Reginald Whitlow II testified that he thought he saw Vasquez shoot a handgun when the melee began. The defense impeached Whitlow's credibility with his admission to drinking and smoking marijuana that night, but Whitlow stuck to his story. The only other relevant testimony came from Demond Brown, who said he saw Vasquez shooting a handgun during the shootout. In our view, Brown was a "tiebreaker" witness whose credibility—unlike that of the other two witnesses—had not been impeached. Therefore, the jury might well have seen Demond Brown's testimony as the true account, making his testimony important to the prosecution's case.

Considering next whether the record demonstrates that Brown's testimony was "cumulative," we determine it does not. The mere fact that one other witness (here Whitlow) has testified to a particular fact (here that Vasquez was holding a handgun) does not render other testimony on that point "cumulative." *See, e.g.*, *Stapleton v. Wolfe*, 288 F.3d 863, 865–66, 868 (6th Cir. 2002). Moreover, Brown's testimony may even have bolstered Whitlow's because whereas Whitlow only testified that Vasquez was holding a handgun, Brown testified both that Vasquez was holding a handgun *and* that someone else (co-defendant Joe Olive) was holding a rifle—this partially undermines Vasquez's testimony that he fired a rifle in self-defense. This potential bolstering weighs against finding harmless error. *Cf. Arizona v. Fulminante*, 499 U.S. 279, 299 (1991) (deeming one confession not "cumulative" of another, despite some overlapping details, where "the jury might have believed that the two confessions reinforced and corroborated each other" and concluding that the error in admitting the confession was not harmless); *Stapleton*, 288 F.3d at 865–66, 868 (relying on *Fulminante* to reverse a state court's harmless-error determination despite AEDPA deference by concluding that one co-defendant's confession inculpating the defendant was not cumulative of another co-defendant's confession also implicating the defendant).

Third, no physical evidence corroborated Brown's story that Vasquez was shooting a handgun. And the other testimonial evidence does not corroborate Brown's account any more than it contradicts it: Whitlow's account corroborates Brown's, but Gibbs contradicted the entire story by testifying that she did not even see Vasquez at the party.

---

[10]For example, in his opening statement, the prosecutor offered that "[n]o guns were found by police" and that he "cannot prove to you who fired that shot, who fired the fatal shot that killed Tamara Stewart."

Fourth, the trial court otherwise permitted little *effective* cross-examination of Demond Brown's preliminary examination testimony. As a preliminary matter, we doubt that the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of "an opportunity for effective cross-examination," *Fensterer*, 474 U.S. at 20 (emphasis removed), when the witness does not appear at trial.[11] In any event, we agree with the trial court that in light of the voluminous discovery in this case, it would have been unrealistic to expect defense counsel to be prepared to question Demond Brown about his criminal record at this early stage. Given this material restriction on the questioning permitted at the preliminary examination, we conclude that the fourth factor points toward a finding that the error was not harmless.

Fifth, the prosecution's case was not terribly strong without Demond Brown's testimony. No physical evidence linked Vasquez to the murder weapon. Ignoring Brown, the testimony was balanced, and each witness had been impeached.[12]

For these reasons, we conclude that the Confrontation Clause error in Vasquez's case "had substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 623, and therefore was not harmless.

## C.     Ineffective Assistance of Counsel

Vasquez argues that the attorney who handled his preliminary examination provided constitutionally ineffective assistance by failing to impeach Demond Brown with his past crimes at

---

[11]*Pointer v. Texas*, 380 U.S. 400, 406–07 (1965), held that the state's introduction against the defendant of a prosecution witness's preliminary examination testimony violated the defendant's Confrontation Clause rights, even though the defendant had the opportunity to question the witness at that early stage. The Court reasoned that the testimony had not been given at "a full-fledged hearing at which the petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." *Id.* at 407. (Despite the references to "counsel," *Pointer* was not a *Gideon v. Wainwright* case. *Id.* at 402.) In *Barber v. Page*, 390 U.S. 719, 725–26 (1968), the Court amplified *Pointer*'s reasoning:

> The right to confrontation is basically a trial right. . . . A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case.

*California v. Green*, the next case in this line, crafted an exception to the rule of *Pointer* and *Barber* by holding that no Confrontation Clause violation under *Pointer* and *Barber* will be found where defense counsel was not "significantly limited in any way in the scope or nature of his cross-examination of the witness . . . at the preliminary hearing." 399 U.S. 149, 166 (1970).
Finally, in *Roberts*, the Court pondered momentarily whether *Green* "suggests that the *opportunity* to cross-examine at the preliminary hearing—even absent actual cross-examination—satisfies the Confrontation Clause." 448 U.S. at 70. But the *Roberts* Court acknowledged that the primary reason the *Green* Court might have thought this was because of "*dicta* [from *Pointer* and *Barber*] suggesting the admissibility of preliminary hearing testimony *under proper circumstances* . . . ." *Id.* at 68–69 (citing *Barber*, 390 U.S. at 725–26, and *Pointer*, 380 U.S. at 407) (emphasis added). To recognize that only *dicta* might *occasionally* support the conclusion that a prior opportunity to question a witness at a preliminary examination testimony satisfies the Confrontation Clause is to recognize that such an opportunity generally does *not* suffice. For this reason, *Roberts* looks like nothing more than an application of *Green*'s exception to the general rule of *Barber* and *Pointer*—that is, "As in *Green*, [Roberts's] counsel was not 'significantly limited in any way in the scope or nature of his cross-examination'" at the preliminary examination. *Id.* at 71 (quoting *Green*, 399 U.S. at 166).

[12]Although "assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims," *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), a federal habeas court need not defer to the state-court factfinder's credibility determinations when reviewing an error for harmlessness. *See, e.g., Fulcher*, 444 F.3d at 809.

that early proceeding. We reject this challenge: counsel's performance was not deficient within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984).

To demonstrate ineffective assistance under *Strickland*, the petitioner must demonstrate that counsel's performance was deficient, i.e., "fell below an objective standard of reasonableness," 466 U.S. at 688, and that counsel's errors prejudiced the defense, *id.* at 687. And because his petition is subject to AEDPA, Vasquez must demonstrate that the state court's rejection of his ineffective-assistance claim is contrary to or represents an unreasonable application of *Strickland*. *E.g.*, *Williams v. Taylor*, 529 U.S. 362, 367, 391 (2000).

The reasonableness of counsel's performance is judged without "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690. Applying these principles, counsel's performance certainly was not deficient, even ignoring momentarily the deference required by AEDPA. First, eschewing cross-examination at the preliminary examination stage is a reasonable strategy. Extensive questioning would tip the prosecution to the weaknesses in its case, but not likely prevent the defendant from being prosecuted because the state need only show probable cause. Second, counsel at the preliminary examination hearing did not know that Demond Brown would later fail to appear at Vasquez's trial. It is only with the benefit of hindsight that the decision to forgo cross-examination at this early stage could conceivably be called an error. Third, because of counsel's recent appointment and the voluminous discovery provided, it was unreasonable on the facts of this case to expect counsel to have accessed and digested Demond Brown's criminal record—the basis for the desired cross-examination—at this early stage.

For these reasons, we reject Vasquez's ineffective-assistance claim.

### III. Conclusion

Vasquez cannot demonstrate that defense counsel provided constitutionally ineffective assistance at the preliminary examination hearing. But Vasquez has established that the state court violated his Confrontation Clause right to impeach Demond Brown's credibility with his criminal record. The state court's resolution of this claim represents an unreasonable application of Supreme Court Confrontation Clause jurisprudence, most notably *Davis v. Alaska*, and this error was not harmless under the *Brecht* standard. For these reasons, we reverse and remand to the district court with instructions to grant Vasquez's petition for habeas corpus.