RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

REGINALD WILLIAMS,

　　　　　　*Petitioner-Appellant,*

　　*v.*

CATHERINE S. BAUMAN, Warden,

　　　　　　*Respondent-Appellee.*

No. 13-1463

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:09-cv-14793—Mark A. Goldsmith, District Judge.

Argued: June 26, 2014

Decided and Filed: July 21, 2014

Before: SUTTON and GRIFFIN, Circuit Judges; SARGUS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Christine A. Pagac, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant. Bruce H. Edwards, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Christine A. Pagac, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant. John S. Pallas, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

1

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.  Reginald Williams, who was convicted in Michigan state court for the fatal shooting of the proprietor of a video store during an attempted robbery, appeals the district court's denial of his 28 U.S.C. § 2254 petition.  Williams's petition alleged (1) that Williams's rights under the Confrontation Clause were violated by the introduction of statements given at two separate preliminary hearings by an eyewitness to the shooting who died before Williams's trial, (2) that Williams's trial counsel was ineffective for failing to object to the introduction of the statements in question, and (3) that the witness's identification of Williams as the shooter was due to an impermissibly suggestive lineup.  The district court denied the petition, concluding that the Michigan state court was not unreasonable in holding that Williams's arguments had no merit.  We affirm.

I.

A robbery went wrong in a Detroit video store in October 2005.  When police officers arrived at the scene, they found store proprietor Waad Shaba lying dead behind the counter with a gun in his hand, shot through the right temple and left knee.  David Banks was one of two witnesses to the robbery and shooting.  He informed the officers that two young men had entered the store, that one of them—who Banks said was wearing a dark shirt and a black hat—had pointed a gun at Shaba and demanded money, and that shots rang out moments later.  Video surveillance footage confirmed that two individuals—one of whom was wielding a gun and was wearing a beige or khaki-colored shirt—had entered the store.

Within an hour of the shooting, Thomas Coleman returned to his mother's house, shot in the hand and the back of the leg, and wearing different clothes than when he had left home earlier that day.  Coleman, who was a friend of Williams, was accompanied by another young man whom Coleman's mother later testified that she did not recognize but knew was not Williams.  Coleman told his mother that he had been shot during an argument at a local gas station, and his mother brought him to the hospital for treatment.

The officers investigating the video-store shooting learned that Coleman was at the hospital and photographed his injuries. Coleman was tested for gunshot residue, but none was found on him.

Several streets away from the crime scene, the officers recovered a backpack containing a beige or khaki short-sleeved shirt, black jeans, and a black baseball cap. Gunshot residue was found on the shirt in a pattern that suggested that the wearer had fired a gun at chest level. The shirt was also spattered with blood, which DNA testing identified as belonging to Coleman with a 1-in-7.663 quadrillion chance that it came from someone else. A DNA profile obtained from the jeans that were in the backpack was identified as belonging to Williams with a 1-in-1.372 billion chance that it matched that of someone else, and a DNA profile lifted from the baseball cap also matched Williams, with a 1-in-29.47 quadrillion possibility that it belonged to a different contributor. Coleman was excluded as a contributor to the material on the jeans and the baseball cap.

Coleman was charged in state court, and his preliminary hearing was held on October 19, 2005. Banks, who had witnessed the shooting, testified at Coleman's hearing that he could not identify the man who had come into the store with the gunman but that he would be able to identify the gunman "if he were dressed like he was before."

Williams was arrested the next day. After he was brought to the local precinct, officers conducted a live lineup of five people, one of whom was Williams. Williams and one other member of the lineup—who was several inches taller than Williams—were wearing dark shirts. Banks was brought in to view the lineup, and "within seconds," he identified Williams as the gunman at the video store where Shaba was killed.

Banks also testified at Williams's preliminary hearing, which was held in early November 2005. At the beginning of the hearing, counsel for Williams noted that he had just been made aware of Banks's testimony at Coleman's preliminary hearing and requested a continuance so that he could obtain a transcript of Banks's prior testimony. The trial court denied the motion for a continuance, noting that Banks was in poor health. At the hearing, Banks identified Williams as the gunman who had entered the video store. When asked about his previous identification of Williams in the lineup, Banks testified that he had identified

Williams as the gunman "[n]ot because of a dark shirt but because of an ID of his face, even though he did have a dark shirt on."

Banks died before Williams's and Coleman's joint trial. Without objection, Banks's testimony from both preliminary hearings was read to Williams's jury. The prosecution presented several lay and expert witnesses testifying to the above facts, and both defendants were convicted. Williams, who was found guilty of felony murder and possession of a firearm during the commission of a felony, received a life sentence.

Williams filed a direct appeal, arguing in pertinent part that the introduction of Banks's testimony at the preliminary hearings violated Williams's rights under the Confrontation Clause, that his attorney was ineffective for failing to object to the introduction of the testimony, and that the lineup in which Williams participated was unduly suggestive and thereby violated the due process clause. The Michigan Court of Appeals denied relief, concluding that Williams's constitutional rights were not violated and that even if they were, the errors were harmless. *See People v. Williams*, 2008 WL 239648 (Mich. Ct. App. Jan. 29, 2008). The Michigan Supreme Court denied leave to appeal.

Williams then filed a 28 U.S.C. § 2254 petition in federal district court, alleging the same claims he asserted in state court. The district court agreed, in part, with Williams by concluding that the admission of Banks's testimony at Coleman's preliminary hearing violated Williams's confrontation rights because "Williams did not have any opportunity to cross-examine Banks at Coleman's preliminary examination." Nevertheless, the district court held that Williams's claims for relief had no merit, given the reasonableness of the state court's determination that any constitutional errors were harmless. The district court denied Williams's petition and granted a certificate of appealability on the claims at issue. Williams appeals.

II.

On appeal, Williams reasserts the three arguments that he made in the state and district courts. We review these claims in light of the substantial deference owed to the state court's decision. Section 2254(d) restricts our authority to remedy state-court error, permitting habeas corpus relief to a state prisoner only where there is an "extreme malfunction[ ]" in the state

criminal justice process rather than serving as "a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation omitted). The statute thus provides that a state prisoner's § 2254 petition may not be granted unless the state court's adjudication of his claims on the merits either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has repeatedly instructed that a state court's resolution of an issue is not necessarily unreasonable, even if it is incorrect. "[A]n unreasonable application of [the Supreme Court's] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). In other words, even if we are convinced that the petitioner's claim has merit, it does not necessarily follow that "the state court must have been unreasonable in rejecting it." *Harrington*, 131 S. Ct. at 786. Instead, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

## III.

First, Williams argues that his confrontation rights were violated by the admission at trial of Banks's prior testimony at both Williams's preliminary hearing and that of his codefendant Coleman. In this regard, the Supreme Court has clarified that the Confrontation Clause "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). The parties do not dispute that Banks's testimony at the preliminary hearings was testimonial, nor that he was unavailable to testify at trial due to his death. *See id.* at 822 (defining "testimonial" statements); *Crawford*, 541 U.S. at 68 (noting that testimony at a preliminary hearing is "testimonial"). The core dispute, therefore, is whether the state court

unreasonably determined that Williams had a prior "opportunity" to cross-examine Banks in the manner contemplated by the Confrontation Clause.

A.

The state court did not come to an unreasonable conclusion of law when it decided that Williams's confrontation rights were not violated by the admission of the statements that Banks made at Williams's own preliminary hearing. Williams, after all, was able to cross-examine Banks's statements at that hearing. Arguing that his opportunity to cross-examine Banks was nevertheless constitutionally deficient, Williams asserts that the Confrontation Clause requires that the defendant have an "adequate" opportunity to cross-examine witnesses, relying for this adjective on two of the Supreme Court's later descriptions of its core holding in *Mattox v. United States*, 156 U.S. 237, 242–43 (1895). *See Crawford*, 541 U.S. at 57; *United States v. Owens*, 484 U.S. 554, 557 (1988). But Williams has failed to identify any Supreme Court precedent supporting his contention that his opportunity to cross-examine Banks at his own preliminary hearing was inadequate to satisfy the rigors of the Confrontation Clause. *See Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (observing that appellate court precedent does not satisfy § 2254(d)'s requirement that a state-court error violate "clearly established Federal law, as determined by the Supreme Court").

Despite Williams's suggestion that his preliminary hearing categorically did not afford him an adequate opportunity to cross-examine Banks due to the relatively limited purpose of the proceeding, this court has recently observed that "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437 (6th Cir. 2010). *See also Vasquez v. Jones*, 496 F.3d 564, 577 & n.11 (6th Cir. 2007). If there is room for reasonable debate on the issue, the state court's decision to align itself with one side of the argument is necessarily beyond this court's power to remedy under § 2254, even if it turns out to be wrong. *See Woodall*, 134 S. Ct. at 1702.

Williams's backup argument is that his ability to cross-examine Banks at his own preliminary hearing was rendered inadequate by the trial court's refusal to continue the hearing until he could obtain a transcript of the testimony that Banks had previously given at Coleman's

hearing.  But both we and the Supreme Court have observed that a trial court's denial of a defendant's request to access potential impeachment evidence does not necessarily violate a defendant's confrontation rights.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (refusing to "transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery"); *Middlebrooks v. Bell*, 619 F.3d 526, 542–43 (6th Cir. 2010) (finding no unreasonable Confrontation Clause determination where the defendant was able to cross-examine the declarant, even though the trial court refused to permit the defendant to access potential impeachment material), *vacated on other grounds sub nom. Middlebrooks v. Colson*, 132 S. Ct. 1791 (2012).  The impeachment evidence of which Williams was deprived in this case was relatively insignificant, as it was substantially the same as the testimony that Banks gave at Williams's preliminary hearing.  Williams's inability to access it does not suggest that an outcome different than that in *Ritchie* and *Middlebrooks* is obviously required in this case, meaning that the state court was not unreasonable in reaching a similar result.

Given the dearth of Supreme Court precedent controlling the question of whether a defendant's confrontation rights require something more than an opportunity to cross-examine a declarant at the defendant's own preliminary hearing without access to desired potential impeachment evidence, the state court's resolution of the issue against Williams is not susceptible to this court's second-guessing.  *Woodall*, 134 S. Ct. at 1702, 1705–07.  At least with respect to the admission at trial of Banks's testimony at Williams's own preliminary hearing, then, the state court's conclusion that Williams suffered no confrontation error was not unreasonable.

B.

As the district court recognized, a more problematic confrontation issue arises with respect to the admission at trial against Williams of Banks's testimony at Coleman's preliminary hearing.  The state court seems to have reasoned that Williams's opportunity to cross-examine Banks at Williams's own preliminary hearing satisfied the Confrontation Clause's cross-examination requirement, such that the admission at trial of Banks's testimony at Coleman's preliminary hearing was fair game—despite the fact that Williams was not a party to Coleman's hearing and in fact had little or no idea what Banks had said at it.  By implication, the state

court's position is that the Confrontation Clause permits the introduction of out-of-court testimonial statements against a defendant as long as the defendant was at some point able to ask the declarant questions under oath, even in an entirely different proceeding, even if the questions were about entirely different statements, and even if the defendant was prevented from learning about the very testimonial statements that are subsequently sought to be introduced against him at trial.

It is difficult to square this reasoning with pertinent Supreme Court precedent, which exhibits a concern not about unexamined *persons* but about unexamined *testimony*. "[C]onfrontation," the Supreme Court has long held, "means more than being allowed to confront the witness physically." *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985) (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). *Crawford*, which demanded that a defendant have had a prior opportunity for cross-examination before an out-of-court testimonial statement could constitutionally be admitted against him, rooted its insistence in a testimony-specific rationale: "[T]he Clause's ultimate goal is to ensure reliability of evidence . . . . It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61. In other words, the Confrontation Clause does not require an opportunity for cross-examination merely to ensure that the defendant can at some point—perhaps in a different proceeding altogether—see the declarant in court in the flesh. It requires cross-examination to ensure that the defendant can attack the reliability of the particular statements that his accuser has made. *See id.* at 62 ("[T]he problem [with Sir Walter Raleigh's trial] was that the judges refused to allow Raleigh to confront [his accuser] in court, where he could cross-examine him and try to expose his accusation as a lie."). It is therefore difficult to interpret *Crawford*'s cross-examination requirement as failing to presuppose that the defendant has the ability to cross-examine the declarant about the out-of-court statements that are later sought to be admitted against him. *Id.* at 43–50, 57–59. Indeed, that appears to be the whole point of the rule.

Regarding this issue, however, we need not decide whether the state court unreasonably applied clearly established federal law as determined by the Supreme Court because a confrontation violation, if any, was harmless. "[W]hen a state court determines that a

constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 119 (2007). Generally, a constitutional error is harmless only if a court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). But a federal court reviewing a § 2254 petition must assess the prejudicial impact of even a *constitutional* error under the harmlessness standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), under which "an error requires reversal only if it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 631 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). *See Fry*, 551 U.S. at 121. This standard is even more difficult for a § 2254 petitioner to meet than a requirement that the petitioner demonstrate that the state court's determination of harmless constitutional error was itself unreasonable, meaning that we do not need to formally apply "*both* tests (AEDPA/*Chapman* and *Brecht*)" as "the latter obviously subsumes the former." *Fry*, 551 U.S. at 120.

The *Brecht* standard is not satisfied here. In determining whether a Confrontation Clause violation was prejudicial, we reference the factors suggested in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986), *see Vasquez*, 496 F.3d at 575 & n.9, which include the centrality of the testimony to the prosecution's case, whether the testimony was cumulative, the existence of other evidence that materially corroborated or contradicted the testimony, the extent of cross-examination permitted, and "the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684. As indicated, the state court reasonably concluded that the admission of Banks's testimony at Williams's own preliminary hearing posed no Confrontation Clause issue, meaning that we may not disturb the state court's ruling that it was properly admitted at trial. This is fatal to Williams's assertion that any confrontation violation with respect to Banks's other testimony was not harmless. As the state court noted, Banks gave substantially identical testimony at both hearings, so the admission of the testimony from Coleman's preliminary hearing added little to the case against Williams. Banks's positive identification of Williams as the shooter, in fact, was referenced only in the testimony he gave at Williams's preliminary hearing, not the testimony he gave at Coleman's preliminary hearing. Further, the minor inconsistencies between the statements were helpful to Williams, whose counsel highlighted them in closing argument.

As a result, far from being prejudiced by the admission of the testimony that Banks had given at Coleman's preliminary hearing, it appears that Williams benefited to some degree from its admission. At the very least, the admission at trial of Banks's testimony at Williams's preliminary hearing rendered Banks's testimony at Coleman's preliminary hearing largely redundant, bearing almost no impact on what was a strong case against Williams. *See Van Arsdall*, 475 U.S. at 684. Thus, we conclude that the introduction of this testimony against Williams—even if erroneous—did not substantially affect the verdict returned against him and was, as a result, harmless. *Brecht*, 507 U.S. at 631.

C.

Williams's ineffective-assistance claims fare no better. As we have noted, the state court reasonably concluded that the admission of some of Banks's statements was not error, and the admission of the remainder of Banks's statements was harmless. Accordingly, it follows that the state court reasonably concluded that Williams was not prejudiced by his counsel's failure to object to their admission. *See Strickland v. Washington*, 466 U.S. 668, 692 (1984).

IV.

Finally, Williams claims that the lineup in which he participated was so suggestive that it violated his due process rights. He is correct that the use by the police of an identification procedure may at times pose due process concerns—but it does so "only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012). Even then, suppression of the evidence is warranted only if, on the totality of the circumstances, "improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* (quoting *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). The "corrupting effect of the suggestive identification" must be weighed against factors indicating that the eyewitness identification is reliable, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Despite Williams's arguments, we cannot agree with him that the state court acted unreasonably when it determined that the eyewitness identification procedure did not violate Williams's due process rights. *See Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). Williams concentrates on the fact that Banks testified that the robbery occurred quickly, that Banks was "petrified," that Banks believed that the gunman had been wearing a dark shirt (contrary to the videotape, which showed the gunman wearing a white or beige shirt), that Banks testified at Coleman's preliminary hearing that he thought that he would be able to recognize the gunman "if he were dressed like he was before," and that Williams was the shorter by several inches of the two participants in the lineup who were wearing a dark shirt.

But Banks also testified that he was only twenty feet away from the gunman during the attempted robbery and was able to look him full in the face. The lineup was held only two weeks after the incident occurred. An attorney was present to ensure that it was fair, and Williams was permitted to choose where in the lineup he wished to stand. Williams's wardrobe was a matter of happenstance: he was not required to wear a dark shirt at the lineup, but simply happened to be wearing one when he was arrested. Banks, when brought in to view the lineup, identified Williams as the gunman "within seconds." Banks later testified that he identified Williams in the lineup "[n]ot because of a dark shirt but because of an ID of his face, even though he did have a dark shirt on." Finally, DNA evidence later linked Williams to a complete set of clothes matching those worn by the gunman, including a shirt spattered with gunshot residue and Coleman's blood.

On these facts, the state court concluded that the lineup was not so impermissibly suggestive as to cause a substantial likelihood of misidentification and that Williams was not prejudiced by it, in any event. This eminently reasonable conclusion requires our deference under § 2254(d).

V.

For these reasons, we affirm the judgment of the district court.