NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0330n.06

**No. 09-1344**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**May 28, 2010**
LEONARD GREEN, Clerk

ALI SABRI JAWAD AL-TIMIMI,                )
                                          )
    *Petitioner-Appellant*,          )   ON APPEAL FROM THE
                                          )   UNITED STATES DISTRICT
v.                                        )   COURT FOR THE EASTERN
                                          )   DISTRICT OF MICHIGAN
                                          )
ANDREW JACKSON,                           )   **O P I N I O N**
                                          )
    *Respondent-Appellee*.           )

BEFORE:    **GUY, COLE, and SUTTON, Circuit Judges**.

**COLE, Circuit Judge**. The petitioner-appellant, Ali Sabri Jawad Al-Timimi, appeals the

district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Because

Al-Timimi has not demonstrated that the requirements for habeas relief under the Antiterrorism and

Effective Death Penalty Act of 1996 have been met, we **AFFIRM** the district court's denial of his

petition.

**BACKGROUND**

Following a jury trial in the Wayne County Circuit Court, Ali Sabri Jawad Al-Timimi ("the

petitioner") was convicted of second-degree murder and sentenced to fifteen to twenty-five years in

prison. The conviction followed from a traffic collision on October 3, 2001 involving the petitioner

and Waheed Al-Alyawi—the boyfriend of the petitioner's sixteen-year-old sister-in-law, Zamen Al-

Kasid—who was riding a motorcycle when the petitioner's car struck and killed him. The petitioner

fled the scene in his car, but two eye-witnesses recorded his license-plate number. When located and

interviewed by police, he initially denied knowing about the accident at all; later, he admitted that he had been involved in the accident but denied knowing Waheed. After the police learned of the romantic connection between Waheed and Zamen, of which Zamen's family did not approve, the petitioner was charged with first-degree murder.

On October 15, 2001, the police conducted an interview with Zamen, who stated that Waheed had told her prior to the accident that he was sick of his life without her and would kill himself to prove his love. At the petitioner's preliminary examination on October 26, 2001, held before Dearborn District Judge Virginia Sobotka, Zamen testified under oath as a witness for the prosecution. Because of malfunctioning recording equipment and the subsequent death of the court reporter, only a partial transcript of her testimony is available. The partial transcript reveals that Zamen testified that, at the time of the accident, she lived with her parents, the petitioner and the petitioner's wife and that, before his death, Waheed had asked her parents for permission to marry her. Initially, her parents had approved the engagement, but later withdrew their approval. Nonetheless, Zamen stayed in contact with Waheed, resulting in the petitioner's visiting her at school on October 3, 2001, the day of Waheed's death, to discuss the impropriety of the relationship.

While the transcript ends at this point, according to testimony later given at trial by Judge Sobotka and two police officers who had attended the hearing, Zamen proceeded to testify that the petitioner had advised her to end the relationship. Later on October 3, Zamen's father discovered her in her bedroom speaking on her cellular telephone with Waheed. An argument ensued in which Zamen's father struck her at least once. Once her father left the room, the petitioner confronted Zamen again, threatening that he would kill Waheed and that her brother would kill her. Judge

Sobotka testified that she had copied verbatim Zamen's testimony on this point: According to her notes, Zamen had stated that the petitioner had said: "You'll see what I'll do to deceased. He won't be alive. [Zamen's brother] will kill you. . . . I will kill decease[d]. . . . Today you will see what I will do. I will kill. And your brother will kill you." (Trial Tr. 62-63, Oct. 9, 2002.)

After the hearing, Zamen was taken into protective custody but escaped in December 2001. Upon becoming aware of her disappearance in March or April 2002, the police conducted a search for her, but Zamen still could not be located when the petitioner's trial began in October 2002. In light of her absence, the trial court allowed the partial transcript to be read to the jury and the prosecution to call as witnesses Judge Sobotka and the two police officers, who recounted their recollection of the remainder of Zamen's testimony. Judge Sobotka–-who was not identified as a judge when she testified—acknowledged that she had taken only two pages of notes during Zamen's testimony, which she described as not having lasted very long. Both officers acknowledged that they had not taken any notes and were testifying from memory. On cross-examination, one of the officers further stated that she could not remember which facts had been brought out during the direct examination and which on cross-examination.

Defense counsel did not call any witnesses who had been in the courtroom during the preliminary examination, as none could be located who had a full recollection of the cross-examination testimony. Counsel did call other witnesses, however, including one of Zamen's sisters, Rafah Al-Kasid, who testified that Zamen told her that Waheed had threatened to kill himself if she would not marry him and that the police had coerced her to testify in the manner she did at the preliminary examination. Other witnesses called by the defense testified that the petitioner was not

3

involved in disciplining Zamen, that it would have been against the family's religious beliefs for him to have been left alone with her, and that he had not in fact been present at the house during the time of the alleged fight between Zamen and her father.

At the conclusion of the five-day trial, the jury found the petitioner guilty of second-degree murder. On direct appeal, the petitioner argued that his right to confront the witnesses against him had been violated by the admission of Zamen's prior testimony. The Michigan Court of Appeals rejected this argument and affirmed his conviction. *People v. Al-Timimi*, No. 245211, 2004 WL 1254271 (Mich. Ct. App. June 8, 2004) (unpublished). The Supreme Court of Michigan denied leave to appeal on March 31, 2005, over the dissent of two justices. *People v. Al-Timimi*, No. 126725, 693 N.W.2d 822 (Mich. Mar. 31, 2005) (table). On October 6, 2005, the petitioner filed for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan, again arguing that his Confrontation Clause rights had been violated. On February 17, 2009, the district court denied the petition but, on February 18, granted a certificate of appealability. We have jurisdiction over the petitioner's appeal under 28 U.S.C. §§ 1291 and 2253.

## ANALYSIS

We review de novo a district court's decision to grant or deny a petition for a writ of habeas corpus. *Joseph v. Coyle*, 469 F.3d 441, 449 (6th Cir. 2007). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Clearly established federal law"

*Al-Timimi v. Jackson*
Case No. 09-1344

under AEDPA refers to the holdings, not the dicta, of the Supreme Court at the time of the state-court decision at issue. *Railey v. Webb*, 540 F.3d 393, 413-14 (6th Cir. 2008) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004)). A state-court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state-court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 407-08, or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context," *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000).

The petitioner argues that the admission of Zamen's testimony from the preliminary examination violates the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Supreme Court has made clear that the right to confrontation bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). As the petitioner argues, there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes. *See Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation

5

Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted); *see also* Prior Opportunity for Cross-Examination, Posting of Richard D. Friedman to The Confrontation Blog, http://confrontationright.blogspot.com/2005/02/prior-opportunity-for-cross.html (Feb. 11, 2005, 10:12 EST) (discussing potential timing and motivation problems that may make prior opportunity for cross-examination inadequate). Since the purpose of the preliminary examination is only to determine whether probable cause exists to proceed to trial, defense counsel may lack adequate motivation to conduct a thorough cross-examination, *see Barber v. Page*, 390 U.S. 719, 725 (1968) (noting in dicta that "[a] preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial"), and may wish to avoid tipping its hand to the prosecution by revealing the lines of questioning it plans to pursue. A second problem is that the opportunity for cross-examination at the preliminary examination may come too early in the proceedings to be useful to the defense. For example, at the time of the hearing in this case, the petitioner's counsel was unaware of the October 15, 2001 interview the police conducted with Zamen and had not yet been given the interview notes by the prosecution—nondisclosure that, had it occurred at the trial stage, may well have implicated the petitioner's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) (requiring prosecution's disclosure of material evidence favorable to the accused).

These potential problems notwithstanding, because this case is before us on collateral review, we may grant habeas relief only if the petitioner has satisfied the high threshold established by AEDPA. Reviewing the Supreme Court's cases in this area, we cannot find that the trial court's

6

decision to admit the petitioner's testimony was contrary to, or involved an unreasonable application of clearly established federal law. It is true, as the petitioner argues, that the Supreme Court has acknowledged that a preliminary hearing generally involves a less searching exploration into the merits of a case than does a trial. *See Barber*, 390 U.S. at 725. But this statement was dicta, not clearly established law for the purposes of AEDPA. *See Railey*, 540 F.3d at 413-14. Nor was it left unqualified: The *Barber* Court went on to suggest that "there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable." 390 U.S. at 725-26. Moreover, in its later decisions, the Court appears to have retreated from the doubts it expressed in *Barber* by finding that the opportunity for cross-examination afforded at a preliminary examination may satisfy the Confrontation Clause in at least some circumstances.

For example, in *California v. Green*, 399 U.S. 149 (1970), the Court found no Sixth Amendment violation where the trial court admitted a prior statement of a witness made at a preliminary hearing. As the Court noted, the witness was under oath; the defendant "was represented by counsel—the same counsel in fact who later represented him at the trial," and "had every opportunity to cross-examine [the witness] as to his statement;" and "the proceedings were conducted before a judicial tribunal equipped to provide a judicial record of the hearings." *Id.* While the Court found that the case did not present an occasion "to map out a theory of the Confrontation Clause," *id.* at 162, it held that the circumstances of the particular preliminary hearing at issue, "closely approximating those that surround the typical trial," satisfied the Sixth Amendment. *Id.* at 165; *see also id.* ("[W]e do not find the instant preliminary hearing significantly

7

different from an actual trial to warrant distinguishing the two cases for purposes of the Confrontation Clause.").

Similarly, in *Ohio v. Roberts*, 448 U.S. 56 (1980), the Court held that the admission of a prior statement given at a preliminary hearing had sufficient "indicia of reliability" to satisfy the Confrontation Clause. The Court noted that *Green* suggested that "the *opportunity* to cross-examine at the preliminary hearing—even absent actual cross-examination—satisfies the Confrontation Clause," although counsel had, in fact, cross-examined the witness at the earlier proceeding. *Id.* at 70. The Court in *Roberts* declined to resolve whether the mere opportunity to cross-examine or de minimis questioning actually would be constitutionally sufficient, since, like in *Green*, defense counsel had "tested [the witness's] testimony with the equivalent of significant cross-examination." *Id.* In addition, the same "accouterments of the preliminary hearing" that satisfied the Court in *Green* were present. *Id.* at 73. Thus, "[s]ince there was an adequate opportunity to cross-examine [the witness], and counsel . . . availed himself of that opportunity," the Sixth Amendment was satisfied. *Id.* (internal quotation marks omitted).

While the Court subsequently rejected the "indicia of reliability" test in *Crawford*, it approvingly cited the outcome of both *Roberts* and *Green*. *See Crawford*, 541 U.S. at 57-58. The *Crawford* Court also affirmed the results in *Barber* and *Motes v. United States*, 178 U.S. 458 (1900), where prior testimony given at a preliminary hearing was excluded because the government had not established the unavailability of the witness, and in *Pointer v. Texas*, 380 U.S. 400 (1965), where evidence was excluded because the defendant was not represented by counsel at the preliminary hearing. *See Crawford*, 541 U.S. at 57. At the preliminary hearing in this case, as in *Roberts* and

8

*Green* and unlike in *Pointer*, the petitioner was represented by counsel, who was afforded a full opportunity to cross-examine the prosecution's witnesses, without any apparent restriction by the presiding judge, and availed himself of this opportunity to the extent that he saw fit. Unlike in *Barber* and *Motes*, there is no indication that the government played a role in Zamen's unavailability. And no decision of the Court has suggested if or when the unavailability of potentially favorable evidence may undermine the adequacy of an opportunity for cross-examination at a preliminary examination. Accordingly, we cannot say that the trial court's decision to admit the testimony from the preliminary examination was contrary to, or an unreasonable application of clearly established federal law.

The petitioner also argues that, even if the fact of the testimony's admission did not violate the Confrontation Clause, the manner of its admission did. According to the petitioner, *Green* sets out four minimal criteria that must be met to satisfy the Confrontation Clause: (1) the declarant was under oath at the preliminary hearing; (2) the accused was represented at the preliminary hearing by the same counsel who later represented him at trial; (3) the accused had every opportunity at the preliminary hearing to cross-examine the declarant as to his statement; and (4) the proceedings at the preliminary hearing were conducted before a judicial tribunal equipped to provide a judicial record of the hearing. In the plaintiff's view, the fourth purported criterion—that the testimony occur before a tribunal equipped to provide a judicial record of the hearings—was undermined by the unavailability of a verbatim record of the proceedings, rendering unconstitutional the recreation of Zamen's testimony at trial.

As the district court noted, however, the Court in *Green* clearly did not intend to set out "the irreducible minimum requirements for prior testimony to pass muster under the Confrontation Clause." *Al-Timimi v. Jackson*, 608 F. Supp. 2d 833, 847 (E.D. Mich. 2009). Indeed, the Court expressly disclaimed any intent "to map out a theory of the Confrontation Clause." *Green*, 399 U.S. at 162. More fundamentally, the Confrontation Clause simply is not implicated by the manner in which prior testimony is reproduced at trial. As the Supreme Court stated in *Crawford*, "the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." 541 U.S. at 61. Once the prior opportunity for cross-examination is satisfied, so too is the Sixth Amendment. *See id.* at 55 ("We do not read the historical sources to say that a prior opportunity to cross-examine was merely a sufficient, rather than a necessary, condition for admissibility of testimonial statements. They suggest that this requirement was dispositive, and not merely one of several ways to establish reliability."). Accordingly, the petitioner's argument fails.

## V. CONCLUSION

For the reasons above, we **AFFIRM** the district court's denial of the petition for issuance of a writ of habeas corpus.