**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0468n.06
No. 15-2292

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 15, 2017
DEBORAH S. HUNT, Clerk

DOUGLAS WEISSERT,                          )
                                           )
    Plaintiff-Appellant,                   )
                                           )       ON APPEAL FROM THE
v.                                         )       UNITED STATES DISTRICT
                                           )       COURT FOR THE WESTERN
CARMEN PALMER, Warden,                     )       DISTRICT OF MICHIGAN
                                           )
    Defendant-Appellee.                    )       OPINION
                                           )
                                           )

BEFORE:     SURHEINRICH, BATCHELDER, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Following a jury trial in Michigan state court, Petitioner Douglas Weissert was convicted of first-degree felony murder, conspiracy to commit armed robbery, assault with intent to rob while armed, first-degree home invasion, and three counts of possession of a firearm during the commission of a felony. Following unsuccessful state court appeals, Weissert filed a petition for habeas corpus, which was denied. Because the decision of the Michigan Court of Appeals on these issues was not contrary to, or an unreasonable application of, clearly established Supreme Court law, we **AFFIRM**.

## I.    BACKGROUND

Weissert conceived and organized a plan for Eddie Lewis and Danwood Durst to rob Frank Sibson, the man who supplied Weissert with drugs. Sibson was in the marijuana business, and Weissert believed him to keep large amounts of money in his home. The robbery resulted in

Sibson's murder. Testimony at trial showed that Weissert conceived of the plan to rob Sibson, and provided Lewis with the weapon used in Sibson's murder. After being found guilty at trial, Weissert was sentenced to life imprisonment for the murder conviction, 17-35 years for the conspiracy conviction, 7-20 years on the home-invasion conviction, and three consecutive two year sentences on the felony-firearms convictions.

Following Sibson's murder, Lewis was arrested and interrogated twice. Both of these statements implicated Weissert, who was arrested and interrogated on February 28, 2006 and again on March 2, 2006.[1] During his first interrogation, Weissert said, "I think I'd like an attorney," and the interrogation ceased. Weissert went voluntarily to the police station for the second interrogation. During the interrogation, Weissert referenced an attorney multiple times, but continued to volunteer information and answer questions between the references.

> A: I'm coming clean. I'm going to do everything I can to make this as right as I can if that is possible. OK. What I would like, OK, is before I'm arraigned tomorrow, if I'm even going to be arraigned tomorrow, to be able to have an attorney present. OK? I'll answer some of your questions tonight, OK. I didn't want to waste your time, but I want you to know I'm not fuckin' bullshittin' you or fuckin' you around, but I think I should have an attorney present but I'm willing to tell you everything I know.
> Q: Now, or when?
> A: I would – I'd like to have an attorney present. I mean, I'll answer some of your questions now. You've got to pick me to see if I'm bullshittin' you sir, 'cause I'm not. I'm telling you the truth and I'm being frank with you.

R. 2-18 at PageID# 198-200.

> Q: If you want an attorney-
> A: I do, sir.
> Q: -and further this – your assistance to this I think we should stop now. Right?
> A: I just want to be straight up with you guys and I want you to believe I am and I'm telling you-I know you're looking at me like I'm full of shit on him driving, but that was the story I got.

*Id.* at PageID# 234-35.

---

[1] Weissert only challenges the constitutionality of his second interrogation.

A: I mean, if you were in my position would you not want an attorney?
Q: You know, Doug, I think you need an attorney. I really do.
A: OK. You're being honest with me.
Q: I am. And quite frankly these kinds of cases I often welcome an attorney that doesn't want to just sit there and grab a dollar because I don't want to take a chance on technical problems with a case.

*Id.* at PageID# 239. At this point, the detectives went on to discuss the technical details of how Weissert could get in touch with an attorney, and the interrogation ends.

Before trial, the court considered Weissert's motion to suppress his statements and held that Weissert's invocation of his right to counsel was not unequivocal and did not render his statements inadmissible.

At Weissert's state preliminary examination hearing (similar to a probable cause hearing), Lewis testified and was cross-examined by defense counsel. Lewis testified that he had not been offered anything in exchange for his testimony, but that he was testifying because Weissert had threatened to kill his children if he did not pull off the robbery. Lewis said Weissert was in the drug trade with Sibson, and knew that Sibson would have a lot of money because he was going to Chicago to pick up more drugs soon. He testified that the robbery of Sibson's house was Weissert's idea, that they had discussed the plan several times, and that Weissert gave him a .22 caliber revolver to take with him that evening. Weissert also drove Lewis by Sibson's house so he would know where it was.

Lewis testified that on the night of the robbery, he and Durst entered Sibson's house and saw Sibson and his wife Danielle in bed. Lewis said "we're here to pick up the dope man's money" and Sibson woke up and jumped on him. Lewis said he could not breathe, and so he shot Sibson in the leg twice, then shot him again, aiming higher. The two struggled for the gun, and it went off another time. Lewis pushed Sibson off and asked about the money, but Danielle said there was no money. Lewis left the house, meeting Durst who was already outside. Lewis

testified that the two then went to Weissert's home. Weissert asked about the money, and Lewis told him that there was no money, and that the robbery went bad and he had to shoot Sibson. Weissert said that they needed to get rid of the gun and everything else used, and that they should find a place where no one would find any of it.

Defense counsel cross-examined Lewis at the preliminary examination for approximately two and a half hours. The questioning covered a variety of topics, including impeachment with Lewis's prior inconsistent statements, Weissert's role in planning the robbery, and Lewis's financial difficulties. After Lewis testified that he had no agreement with prosecutors regarding his charges and that he was testifying because of threats from Weissert, defense counsel asked whether he intended to have a preliminary examination or fight the charges. The judge interrupted after several questions had been asked. The judge also stopped the questioning after counsel asked several questions regarding Lewis's financial status. Finally, counsel was not permitted to continue asking questions about Lewis's statement that a different man took part in the robbery:

> Defense Counsel: Do you recall whether or not you told the police that the Hispanic/Mulatto guy had the real gun?
> The Court: We're not going to have any more questions with regard to a Hispanic/Mulatto guy and I'll tell you why. You already asked ten questions with regard to a- . . . We could be here for the next three months going over this taped statement that this witness doesn't recall because apparently he was higher than a kite when he gave at least a good portion of it. . . . He doesn't recall anything about a Hispanic/Mulatto guy statement to the police. So why are we asking all these questions . . . when his first answer was that he doesn't recall anything about a Hispanic/Mulatto guy? Please let's –
> Defense Counsel: I'll move on-

R. 61-1 at PageID# 546-47.

After the preliminary examination, the court found probable cause and bound Weissert over for trial. At trial, Lewis invoked his Fifth Amendment right against self-incrimination and

refused to testify. The court ruled that he was unavailable and that his preliminary examination testimony was admissible. The testimony was presented to the jury, along with recordings and transcripts of Weissert's interrogations.

After Weissert was convicted and sentenced, he filed a motion for a new trial, which was denied after a hearing. He appealed as of right to the Michigan Court of Appeals, raising nine issues. The court affirmed but remanded the case to the trial court to vacate the convictions on the predicate offenses of assault with intent to rob while armed and first-degree home invasion. *People v. Weissert*, Nos. 276150, 282322, 2008 WL 4958795 (Mich. Ct. App. Nov. 20, 2009). Weissert appealed to the Michigan Supreme Court, which denied his application for leave to appeal. *People v. Weissert*, 771 N.W.2d 752 (Mich. 2009) (table decision). Weissert then commenced this action under 28 U.S.C. § 2254 by filing a petition for habeas relief with the district court. The magistrate judge issued a lengthy report and recommendation denying the petition. Weissert filed objections and the district court issued an order approving and adopting the report and recommendation. Weissert now appeals, raising two issues.

## II. STANDARD OF REVIEW

We review the district court's legal conclusions de novo and its factual findings for clear error. *See Hanna v. Ishee*, 694 F.3d 596, 605 (6th Cir. 2012). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (per curiam) (quoting *Harrington*, 562 U.S. at 103).

Clearly established federal law, for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 40 (2011). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

## III.    ANALYSIS

Weissert presents two issues for appeal: 1) whether the Michigan Court of Appeals failed to apply clearly established federal law in a reasonable manner when it held that he had an adequate opportunity to cross-examine Lewis at the preliminary hearing; and 2) whether the Michigan court applied Supreme Court precedent in an unreasonable manner when it ruled that he never unambiguously invoked his right to counsel during his second interrogation.

**A.      Sixth Amendment Confrontation Clause claim**

Weissert argues that the admission of Lewis's preliminary examination testimony at Weissert's trial was a denial of his rights under the Confrontation Clause of the Sixth Amendment. He bases this argument on the trial judge's limitations on the cross-examination of Lewis during the preliminary hearing.

Testimonial out-of-court statements are barred under the Confrontation Clause unless a witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 57 (2004). Lewis's testimony was testimonial and the parties do not contest that he was unavailable to testify at trial, so the issue is whether the cross-examination was adequate. We have noted that "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (quoting *Al-Timimi v. Jackson*, 379 F. App'x 435, 437 (6th Cir. 2010)). However, the Supreme Court has found that some preliminary examination testimony is admissible at trial. *See, e.g., California v. Green*, 399 U.S. 149, 165 (1970). At the least, there is no clearly established federal law holding that cross-examination at a preliminary hearing is insufficient for Confrontation Clause purposes.

The Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). The Confrontation Clause does not preclude a trial judge from placing limits on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

relevant." *Id*. The "exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (quoting *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974)).

Weissert points to several lines of inquiry that the trial judge cut short during cross-examination. First, he argues that the judge did not allow defense counsel to expose whether Lewis had been promised leniency in exchange for his testimony. Next, he states that defense counsel was not able to cross-examine Lewis regarding his prior inconsistent statements claiming that a "Hispanic/Mulatto man" committed the robbery, and that revealing these inconsistencies would have shown that Lewis was untrustworthy. Finally, Weissert argues that he was not permitted to cross-examine Lewis regarding his independent motivation to kill Sibson because the judge limited cross-examination about Lewis's financial difficulties and distaste for Sibson.

> The Michigan Court of Appeals found that:

> defense counsel had the opportunity to question Lewis regarding both his interaction with defendant, the circumstances surrounding the Sibson robbery, and other issues central to the establishment of the charged offenses; the judge primarily limited defense counsel's cross-examination of peripheral matters or matters about which defendant claimed to lack knowledge, concluding that defense counsel was using the preliminary examination as an opportunity to essentially conduct discovery and raise doubts regarding Lewis's credibility in order to prepare a transcript for trial.

2008 WL 4958795, at *3 (footnote omitted). It determined that defense counsel had an adequate opportunity to cross-examine Lewis, and that Weissert's confrontation rights were not violated. *Id*.

Defense counsel cross-examined Lewis for approximately two and a half hours. During this time, he explored a multitude of topics, including the circumstances of the robbery, the extent and nature of Weissert's involvement, and Lewis's inconsistent statements. At times, the judge cut off testimony on the basis that it was irrelevant, repetitive, or seeking discovery.

Defense counsel asked numerous questions regarding Lewis's potential bias and established that there was no agreement of leniency in exchange for his testimony; counsel further asked if the prosecution had made any promises to Lewis, what sentence Lewis believed the prosecution would be seeking, why he did not enter a plea deal, and why he waived his preliminary examination rights—all before being stopped by the judge.

Defense counsel also extensively explored Lewis's inconsistent statements throughout the examination. He asked several questions specifically regarding Lewis's prior inconsistent statement that a "Hispanic/Mulatto man" committed the crime. R. 61-1 at PageID# 540 ("Do you remember telling the police that the shooter was a Hispanic/Mulatto?"); *id.* at PageID# 540-41 ("And you told the police that this Hispanic/Mulatto you didn't know his name but he was short, remember that?"). Finally, counsel asked questions concerning Lewis's financial situation and the judge indicated that he was cutting off this line of questioning because it was becoming repetitious and seeking discovery.

Counsel was given the opportunity to conduct cross-examination that was constitutionally adequate, *see Fensterer*, 474 U.S. at 20, and the state court's analysis was not unreasonable or contrary to clearly established federal law.

**B.      Fifth Amendment right to counsel**

Weissert next argues that his Fifth Amendment rights were violated when questioning continued during an interrogation after he unambiguously invoked his right to have an attorney present.

When a suspect in custody requests a lawyer, interrogation must cease until a lawyer is provided, unless the suspect initiates discussion. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). This is "designed to prevent police from badgering a defendant into waiving his

previously asserted *Miranda* rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990). To determine whether a custodial statement is improper, a court must first determine whether the suspect unambiguously invoked his right to counsel. *Smith v. Illinois*, 469 U.S. 91, 98 (1984). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459 (1994). "Although a suspect need not 'speak with the discrimination of an Oxford don,' he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. at 459 (citation omitted). If the statement "fails to meet the requisite level of clarity," officers are not required to stop questioning the suspect. *Id*. "[I]f the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith*, 469 U.S. at 95.

Weissert argues that several of his statements unambiguously invoked his right to counsel, and that questioning should have ceased. He argues that a reasonable officer would have understood his statement, "I think I should have an attorney present but I am willing to tell you everything I know," as invoking his right to counsel and that the officer should have immediately ceased the interview. He argues that he also invoked his rights when he replied "I do, sir," after the officer stated "If you want an attorney—."

The Court of Appeals of Michigan found that Weissert's Fifth Amendment rights were not violated.

> During the interview, defendant indicated that he wanted to have an attorney present when he revealed all the information he had regarding Sibson's murder, but he also wanted to give the officers some information that evening. Defendant then agreed to the officers' suggestion that he discuss Lewis and Durst's roles in the Sibson murder that evening, and then wait to discuss his role in the robbery and murder once he had an attorney present. Although defendant provided some information regarding Lewis and Durst's roles in the Sibson murder, he did not acknowledge any wrongdoing or provide details regarding his own involvement, and the officers honored defendant's request not to question him directly regarding his involvement in the murder that evening. Finally, defendant did not make an unequivocal statement that he wanted an attorney to be present; instead, the officers made the first unequivocal suggestion, near the end of the interview, that defendant should get an attorney. Considering that defendant never made an unequivocal, unambiguous invocation of his right to counsel during the interview, the officers did not violate defendant's right to counsel when they continued to question him despite his inquiries regarding an attorney.

2008 WL 4958795, at *5.

In each of the instances that Weissert highlights, he mentioned an attorney, but also expressed his willingness to speak with the officers and his desire for them to believe him. His first potential invocation is unclear in that it could have been interpreted to mean only that he wanted an attorney at his arraignment the following day:

> A: I'm coming clean. I'm going to do everything I can to make this as right as I can if that is possible. OK. *What I would like, OK, is before I'm arraigned tomorrow, if I'm even going to be arraigned tomorrow, to be able to have an attorney present. OK? I'll answer some of your questions tonight, OK.*

R. 2-18 at PageID# 198 (emphasis added). It was not unreasonable for the Court of Appeals of Michigan to find this equivocal, as Weissert also continually states that he wishes to answer some questions now. Weissert's final potential invocation was delivered as follows:

> Q: If you want an attorney-
> A: I do, sir.
> Q: -and further this – your assistance to this I think we should stop now. Right?

> A: I just want to be straight up with you guys and I want you to believe I am and I'm telling you-I know you're looking at me like I'm full of shit on him driving, but that was the story I got.

*Id.* at PageID# 234-35. Here, Weissert's statement came as an interruption in the middle of a sentence that the officer went on to finish. When the officer clarified whether they should stop the interrogation, Weissert replied that he wanted to be "straight up" with the officers, not that he wanted to stop or that he wanted an attorney then.

Weissert initiated this interrogation after successfully invoking his right to counsel at a meeting the day prior. But here, he equivocated in requesting an attorney, and continued to express a willingness to speak with officers when they tried to clarify his unclear statements. Although this is a close call, in light of the AEDPA standard, and the Supreme Court's guidance that the invocation not be ambiguous or equivocal, *see Davis*, 512 U.S. at 459, the Michigan Court of Appeals's determination that Weissert had not unambiguously invoked his right to an attorney was not an unreasonable application of clearly established federal law.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Weissert's habeas petition.